IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs June 27, 2017 at Knoxville

## STATE OF TENNESSEE v. STEPHEN ALEXANDER LYCZKOWSKI

**Appeal from the Circuit Court for Maury County**
No. 24677    David L. Allen, Judge

_____

### No. M2016-02273-CCA-R3-CD

_____

The Defendant, Stephen Alexander Lyczkowski, entered a guilty plea in the Maury County Circuit Court to domestic aggravated assault with the length of the sentence to be determined by the trial court. Following a hearing, the trial court imposed a sentence of ten years. On appeal, the sole issue presented for our review is whether the trial court imposed an excessive sentence. The judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and ROBERT L. HOLLOWAY, JR., JJ., joined.

Brandon E. White, Columbia, Tennessee, for the Defendant-Appellant, Stephen Alexander Lyczkowski.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Senior Counsel; Brent A. Cooper, District Attorney General; and Dan J. Runde, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

On September 22, 2016, the Defendant entered a guilty plea as a Range II, multiple offender to domestic aggravated assault for stabbing the victim, his then-girlfriend, Melissa Malone, in the ear with a pair of scissors. The terms of his plea agreement required the Defendant to serve his sentence in confinement but reserved the length of the sentence to be determined by the trial court after a hearing. The State also

agreed to run the Defendant's five-year sentence in an unrelated case concurrently with the sentence imposed in the instant case.[1]

At the November 4, 2016 sentencing hearing, Officer Alicia Helton, an employee of the Tennessee Department of Correction, testified that she prepared the Defendant's presentence report, which was admitted as an exhibit. The presentence report reflects the Defendant's criminal history in Tennessee as follows: aggravated assault, false imprisonment, two misdemeanor drug possessions, and two misdemeanor domestic assaults. It further showed that the Defendant's probation had been previously revoked and that he was on probation at the time of the instant offense. Officer Helton testified that she also confirmed several Florida convictions referenced by the State in their notice of intent to seek enhanced punishment. The Florida convictions were as follows: possession of a controlled substance, felony battery, resisting arrest, sale of a controlled substance, multiple convictions for possession of marijuana, and aggravated assault.

Documents confirming that the Defendant attended and completed various education classes in Florida were also included and referenced in the presentence report. Defense counsel conceded that the Defendant was on probation for aggravated assault at the time of the instant offense; however, defense counsel objected to the trial court's reliance on any other convictions submitted by the State because they were not provided with certified copies of the convictions. The trial court sustained the Defendant's objection regarding the Florida convictions but overruled the objection with respect to the Defendant's Tennessee convictions. On cross-examination, Officer Helton confirmed that the Defendant had received his general equivalency diploma and completed several vocational classes.

The victim's mother testified that on October 10, 2015, she took her daughter to the emergency room because the victim was having trouble breathing. The victim suffered from a partially collapsed lung, bruising on her face from a prior altercation with the Defendant, and blood was coming out of her left ear. A nurse suspected that the victim had been beaten and called the police. The victim was later transferred to another

---

[1] The record on appeal does not include the guilty plea hearing transcript. The judgment clearly lists the Defendant as a Range II, multiple offender; however, the State claimed in its notice of intent to seek enhanced punishment that the Defendant was in fact a Range III, persistent offender. Because there is no transcript of the guilty plea hearing on appeal this court is unable to determine if the Defendant's offender status was reduced as part of his plea agreement. Nevertheless, the relevant testimony in this case was presented at the sentencing hearing. Therefore, we conclude that the record is adequate for our review. See State v. Caudle, 388 S.W.3d 273, 279 (Tenn. 2012) ("[W]hen a record does not include a transcript of the hearing on a guilty plea, the Court of Criminal Appeals should determine on a case-by-case basis whether the record is sufficient for a meaningful review[.]").

hospital where she remained for five days. Shortly after being released from the hospital, the victim was readmitted to another hospital and eventually placed on life support due to "bleeding on [her] brain." Several photographs taken of the victim in the hospital were admitted into evidence.

Asked what affect, if any, that this offense has had on her, the victim, and the victim's children, the victim's mother replied,

> Well, [the victim] is always asking me why did God keep me alive. And I think part of the reason, and my belief is, so that she can make sure this doesn't happen to another woman. She is number two it has happened to, you know.

Defense counsel objected, and the State then admitted certified copies of the judgments and the affidavits for two of the Defendant's prior misdemeanor domestic assault convictions. On January 20, 2012, the Defendant threatened to kill his parents when they refused to give him money. The Defendant entered a guilty plea and was ordered to attend domestic violence classes. A month later, on February 23, 2012, the Defendant struck his father in the face with an open hand, threw his cell phone, and placed him in a head-lock. The Defendant subsequently entered a guilty plea, which required him to have no contact with his parents.[2] Questioned further by defense counsel, the State admitted into evidence all five certified copies of the Defendant's Tennessee judgments of conviction. The trial court overruled defense counsel's objection.[3]

The victim, age 38, testified that she met the Defendant in February 2015 and began living with him in August 2015. She admitted that she had a drug problem and that she and the Defendant were using heroin and methamphetamine. The victim said that the Defendant had physically abused her eight or nine times prior to the instant offense. In past altercations, she suffered several broken ribs, her teeth were knocked out, she had been bitten, and she sustained black eyes. In regard to the instant case, the victim said that she received a text message from another man "and the next thing [she] knew] [she was] being attacked because [she] apparently raised [her] voice." The Defendant "used his elbow and he would jump up and down to hit her in the sides and

---

[2] The transcript from the hearing shows that the prosecutor was referring to these convictions; however, exhibit numbers 6 and 7 reflect judgments for aggravated assault and false imprisonment. Neither judgment in exhibit 6 or 7 references a victim or the circumstances of the offense.

[3] Later in the hearing, the court clerk testified in an attempt to authenticate certain judgments and affidavits. Defense counsel objected to the affidavits, exhibits 8 and 9, and the trial court admitted them for identification purposes only. However, the State had already admitted these exhibits, as they were self-authenticating business records.

ribs[.]" He struck her in the same fashion as a wrestler's pile driver about ten times. The Defendant then grabbed a pair of scissors, stabbed the victim in the ear, and bit her on the right side of her back. The victim recalled that the Defendant gave her a bath "to get the blood off of [her]." She awoke the next morning and told the Defendant she was going to visit her children at her mother's home.

Regarding her injuries, the victim testified in large part consistently with her mother. In addition, she explained that she had a blood clot, bruising, and bleeding on her brain. A hole was drilled in her brain to relieve the pressure, and she eventually succumbed to a coma. Following the attack, the victim also suffered from extreme post-traumatic stress disorder, anxiety, and depression. She had to take two different anti-depressants, medication to help her sleep due to her night terrors, and other anxiety medication. She believed that the Defendant "dehumanized" her and "completely and emotionally and physically broke [her]." The victim also received treatment from a trauma counselor and extensive physical therapy.

The Defendant provided the following statement:

> Your Honor, I would like to express remorse to [the victim], I'm sorry for what I have caused. It is all no – no excuses. I have been locked up 13 months and I have had some time to think and I am going to do what I need to do when I go to prison. I am not saying give me the six, give me just eight, and I'm going to go, I am going to be in classes, take everything I need to take so I can reenter society. And I say I'm sorry again."

After hearing the above proof and argument of counsel, the trial court imposed a ten-year sentence, which was to be served in confinement pursuant to the Defendant's plea agreement. The Defendant later filed a timely appeal on November 8, 2016.

## ANALYSIS

On appeal, the Defendant essentially argues that his ten-year sentence is excessive. Given his apology to the victim, his rehabilitation capability, and the fact that he took responsibility for his actions immediately after the offense, the Defendant insists that an eight-year sentence is the least severe measure necessary to achieve the purpose for which the sentence was imposed. The State responds, and we agree, that the trial court properly imposed a sentence of ten years' confinement.

We review the length of a sentence imposed by the trial court under an abuse of discretion standard with a presumption of reasonableness. State v. Bise, 380 S.W.3d 682, 708 (Tenn. 2012). "So long as there are other reasons consistent with the purposes and

principles of sentencing, as provided by statute, a sentence imposed by the trial court within the appropriate range should be upheld." Id. "If, however, the trial court applies inappropriate mitigating and/or enhancement factors or otherwise fails to follow the Sentencing Act, the presumption of correctness fails." State v. Carter, 254 S.W.3d 335, 344-45 (Tenn. 2008).

A trial court must consider the following when determining a defendant's specific sentence and the appropriate combination of sentencing alternatives: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in sections 40-35-113 and 40-35-114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant wishes to make in the defendant's own behalf about sentencing. T.C.A. §§ 40-35-210(b)(1)-(7). In addition, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed." Id. § 40-35-103(5). The court must impose a sentence "no greater than that deserved for the offense committed" and "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Id. §§ 40-35-103(2), (4).

As a Range II, multiple offender, the Defendant was subject to a sentencing range of six to ten years for aggravated assault, a Class C felony. See T.C.A. § 39-13-102; see also id. § 40-35-112(a)(3). Thus, the trial court's ten-year sentence is within the statutory range and presumed reasonable. Prior to imposing sentence, the trial court applied enhancement factors 1, 5, 6, 10, and 13(c), see id. § 40-35-114, none of which are in dispute. It also engaged in an exhaustive ten-page analysis of the purposes and principles of sentencing. It further considered as mitigating factors the Defendant's acceptance of responsibility and specifically noted that the Defendant's allocution to the victim was sincere and that the Defendant was a person who could be saved.

Defense counsel candidly acknowledges in his brief our limited standard of review for sentencing issues and his obligation to nevertheless challenge the trial court's imposition of a ten-year sentence on grounds that it was greater than necessary to achieve the purpose for which the sentence was imposed. However, he does not clearly state why he believes the Defendant's sentence is excessive or how the trial court erred in imposing the ten-year sentence. Instead, he essentially asks this court to reconsider the trial court's imposition of sentence based on the Defendant's acceptance of responsibility, his sincerity at the sentencing hearing, and his rehabilitative capacity. Under our law, as acknowledged by the Defendant, this court is bound by the trial court's sentencing

decision because the record shows it was based on the purposes and principles of the Sentencing Act. The trial court properly imposed a sentence that was not arbitrary and that was within the appropriate sentencing range. Therefore, this court may not overturn the sentence imposed by the trial court, even if we preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). Accordingly, because the Defendant has failed to show an abuse of discretion in the trial court's sentence or otherwise overcome the presumption of reasonableness afforded to a sentence imposed within the applicable range, the judgment of the trial court is affirmed.

## <u>CONCLUSION</u>

Based on the foregoing reasoning and authority, the judgment of the trial court is affirmed.

_____
CAMILLE R. MCMULLEN, JUDGE