# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
May 11, 2005 Session

## STATE OF TENNESSEE v. WILLIAM E. PEWITT

### Direct Appeal from the Circuit Court for Williamson County
### Nos. II-CR03168, II-11612    Timothy L. Easter, Judge

---

### No. M2004-02479-CCA-R3-CD - Filed June 14, 2005

---

The Defendant, William E. Pewitt, pled guilty to one count of theft over $1000.00, one count of burglary, and one count of theft over $500.00. The trial court sentenced the Defendant to an effective sentence of two years, and the Defendant appeals, contending that the trial court erred when it denied him alternative sentencing. Finding no reversible error, we affirm the judgments of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Michael J. Flanagan, Nashville, Tennessee, for the appellant, William E. Pewitt.

Paul G. Summers, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; Ronald L. Davis, District Attorney General; Derek K. Smith, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### I. Facts

The Defendant pled guilty to one count of theft over $1000.00, a Class D felony, in case number II-CR03168, and, in case number II-11612, to one count of burglary, a Class D felony, and one count of theft over $500.00, a Class E felony. At the sentencing hearing, the Defendant's presentence report was admitted into evidence. Additionally, John Oden, one of the victims, testified that, at the time of this crime, he lived in Thompson Station, and he had a workshop about one hundred feet behind his home. He said that he learned that his workshop had been burglarized when he looked for a yard machine and could not find it. He testified that, at first, he thought that he had left the machine in the wooded area behind his home, but he could not find it. Oden testified that he then noticed that his drill, a circular saw, and a reciprocating saw were also missing. He realized that he did not leave these items in the yard. Oden testified that the following items were missing: a Stihl weedeater; a Milwaukee Sawzall; a Porter Cable skill saw; a Dewalt cordless drill; and a Stihl

gas leaf blower. He said that the police eventually recovered all of the items except for the leaf blower. Oden testified that the leaf blower cost $184.00. He said that he did not know the Defendant, and he only learned that the Defendant was arrested when a police officer returned his tools. Oden testified that he had never had anything stolen from him before this incident. He said that he felt "[p]retty uncomfortable" from this incident, and he worried that "it might happen again." Oden testified that he was surprised that the Defendant was not in jail, based on the Defendant's record. On cross-examination, Oden testified that he was aware that the Defendant pled guilty to a felony, and, although he wanted to see the Defendant go to prison, he agreed that being labeled a convicted felon was punishment.

George Wollas testified that the Defendant had worked for him, "on and off" for about three years. He said that, during this employment, the Defendant stole from him. Wollas testified that he was "hurt" by the Defendant, but he would not judge the Defendant. He said that he would have given the Defendant something if the Defendant had asked him. Wollas testified that the Defendant stole a tool used to dig trees from him that was worth about $1295.00, and he said that he did not have insurance for the equipment.

David Pratt testified that he prepared the presentence report. He said that, during his investigation of the Defendant, he determined that the Defendant was, at the time of the hearing, on misdemeanor probation and was in good standing.

On cross-examination, Pratt testified that the Defendant was on bond in Davidson County when he was arrested for at least one of the cases in Williamson County. He said that the Defendant was charged with telephone harassment based on calls the Defendant made to the Williamson County Criminal Justice Center. Pratt testified that, in 1990, the Defendant was originally charged with aggravated assault with a deadly weapon, but that charge was reduced to simple assault. He said that, although the presentence report said that the Defendant was fourteen at the time of the offense, that information was incorrect and he was unable to correct this before the sentencing hearing. Pratt testified that the Defendant was not a juvenile when he committed that offense.

Pratt stated that the Defendant was convicted of the following offenses: marijuana possession in 2002; telephone harassment in 1999; driving on a revoked license in 1996; DUI in 1996; evading arrest in 1996; driving on a revoked license in 1996; marijuana possession in 1995; DUI in 1985; and assault in 1990. He said that, even though the Defendant has many DUI and marijuana possession charges, the Defendant has not voluntarily committed himself to a treatment facility. Pratt testified that the Defendant had counseling in the past, but he believed it was for anger management and not drug or alcohol treatment. He said that, to his knowledge, the Defendant was not on parole or probation when he committed the offenses in this case. Pratt testified that the Defendant has no prior felonies, and he only included the convictions in the presentence report that he actually knew were committed by the Defendant.

The Defendant asked the court to grant him probation. He admitted that he committed the crimes, and he said that he pled guilty to the offenses. The Defendant stated that he "feel[s] terrible"

and he "wanted to get . . . in contact with these two guys, but was told by the sheriff's department not to do that." He said that he is "devastated." The Defendant testified that he had a substance abuse problem but that "was in the past," and he does not have an alcohol problem. He said that he did not have a problem with marijuana, but he smoked marijuana "more than occasional[ly]."

The Defendant testified that he has custody of his seven-year-old son, and he also has a seven-month-old daughter. He said that both children live with him. The Defendant testified that he lives with the mother of his daughter, but they are not married. He said that his daughter's mother was the victim of the domestic assault case for which he is on probation, and he went to anger management classes. The Defendant testified that he is working full-time and taking care of his children. He agreed that, in his twenties, he had "been in and out of trouble with the law," but he said that he has no felony convictions. He said that he would be more successful with a suspended sentence now because he has his family. The Defendant testified that his brother had recently committed suicide, and he said that it has had an impact on his entire family. He said that, if the court were to give him split confinement, he might be able to arrange to get some time off with his employer and save his job. He said that he would be able to find another job, but the job that he has now is a very good job that provides for his family "like . . . never before." The Defendant testified that he was aware that being a convicted felon would stay with him for the rest of his life. On cross-examination, the Defendant testified that he would pay whatever Oden thought he should, and he estimated that the amount he should pay would be approximately seven hundred dollars. He testified that this case has been pending for about one year. He said that he does not have the funds to pay in full, but he would make arrangements.

The Defendant testified that his girlfriend was the victim of the false imprisonment and assault offenses for which he was previously convicted. He said that he has been arrested three or four times for incidents involving women that he has known or girlfriends. The Defendant testified that he has been arrested three times for DUI, but he said that he does not have a drinking problem. He explained that those instances occurred back when he had "no priorities," and he does not drink now. The Defendant testified that he takes two different medications for his back pain. He said that he goes to both Narcotics Anonymous and Alcoholics Anonymous treatment, and the last time he went was three or four weeks ago. The Defendant stated that he went because his brother committed suicide and he needed to talk with someone. He said that, prior to that, he had not been to treatment in a very long time.

The Defendant testified that, even based on his record, he did not think he should serve any time in prison. He said that he deserved another chance. He said that the most time he had spent in jail was one hundred days, and he said that he has violated his probation one time. The Defendant admitted that he has been convicted of violence toward both mothers of his children. The Defendant testified that, should he be sentenced to serve jail time, his mother would have to quit her job to care for his son. He said that he does not have anyone to care for his son, but his mother would quit her job before she allowed DCS to take his child. The Defendant stated that the mother of his second child would not be able to care for his seven-year-old son because she works.

The Defendant testified that he last used illegal drugs the day before the hearing and that he would fail a marijuana test, if given to him. He said that he was at work for a pool service when he used the marijuana. He said that he rode with another employee, and he did not drive while at work, but he admitted that he drove to and from work. He said that he paid around twenty dollars for the marijuana, and he got it from a co-worker. The Defendant stated that he was doing "good" before his brother's death, but that situation made him relapse.

Based upon this evidence, the trial court found:

The guiding principles that the court is required to use in determining whether or not a defendant is an appropriate candidate for alternative sentencing are set forth at Tennessee Code Annotated 40-35-103. The immediate statute before that is 40-35-102 that does require the court to consider alternative sentencing if the defendant falls within the parameters of a C, D or E felony and is a standard offender. And if that is the case, pursuant to that statute . . . [the Defendant is] presumed to be a favorable candidate for alternative sentencing.

You stand before the court today having been convicted of two Class D felonies and one Class E felony as a standard offender in all counts so, therefore, you get the presumption of alternative sentencing if there's not evidence to the contrary that you should receive alternative sentencing.

Then we move to Tennessee Code Annotated 40-35-103, the sentencing considerations, which the court is to consider in implementing or fashioning an appropriate sentence. I find in this case that this is not a - - you have some positives . . . the fact that [the Defendant was] honest about the use of marijuana yesterday is a positive, [the Defendant has] no prior felony record, and I'm not sure about remorsefulness or not . . . because I would tend to think that a person who is truly and genuinely remorseful would come into court today on these type of offenses a little bit better prepared than [the Defendant]. I suspect [the Defendant's] remorsefulness is more that [the Defendant] got caught as opposed to being truly sorry . . . .

But on the negative side there are plenty negatives in considering whether or not you should serve this sentence or a portion of it and, of course, the glaring one is your prior record. I think there was testimony, and it looks like the pre-sentence report bears this out, there are at least a dozen prior misdemeanor convictions, [the Defendant was] on bond for offenses out of Nashville at the time [the Defendant] committed these offenses, [the Defendant has] violated probation before . . . there are illegal drugs in [the Defendant's] system as we sit here today. Those are all considerations that I bear in mind in trying to determine whether or not [the Defendant] should serve [his] sentence.

. . . .

The trial court then sentenced the Defendant, as a Range I offender, to two years in jail for the theft over $1000.00, two years for the burglary, and one year for the theft over $500.00. The trial court ordered that, pursuant to the plea agreement, the sentences run concurrently for an effective sentence of two years.

## II. Analysis

On appeal, the Defendant contests the manner of service of his sentence. Specifically, the Defendant asserts that the trial court should have sentenced him to an alternative sentence. The State contends that the trial court properly denied the Defendant alternative sentencing.

When a defendant challenges the length, range or the manner of service of a sentence, it is the duty of this Court to conduct a de novo review of the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2003). This presumption is "'conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances.'" State v. Ross, 49 S.W.3d 833, 847 (Tenn. 2001) (quoting State v. Pettus, 986 S.W.2d 540, 543 (Tenn. 1999)); State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing a defendant or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Dean, 76 S.W.3d 352, 377 (Tenn. Crim. App. 2001); State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994). In conducting a de novo review of a sentence, we must consider: (a) any evidence received at the trial and/or sentencing hearing; (b) the presentence report; (c) the principles of sentencing; (d) the arguments of counsel relative to sentencing alternatives; (e) the nature and characteristics of the offense; (f) any mitigating or statutory enhancement factors; (g) any statements made by the defendant on his or her own behalf; and (h) the defendant's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. § 40-35-210 (2003); State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The party challenging a sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401(d), Sentencing Comm'n Cmts.

In the case under submission, we conclude that there is ample evidence that the trial court considered the sentencing principles and all relevant facts and circumstances. Therefore, we review its decision de novo with a presumption of correctness. Accordingly, so long as the trial court complied with the purposes and procedures of the 1989 Sentencing Act and its findings are supported by the factual record, this Court may not disturb this sentence even if we would have preferred a different result. See Tenn. Code Ann. § 40-35-210, Sentencing Comm'n Cmts; State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

A defendant is eligible for alternative sentencing if the sentence actually imposed is eight years or less. Tenn. Code Ann. § 40-35-303(a) (2003). A defendant who is a standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary. Tenn. Code Ann. § 40-35-102(b)(6)

(2003). In determining whether to grant or deny probation, the trial court may consider the following: the circumstances of the offense; the defendant's criminal record; background and social history; the defendant's physical and mental health; the deterrent effect on other criminal activity; and the likelihood that probation is in the best interests of both the public and the defendant. State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996). The Defendant bears the burden of establishing suitability for probation. Tenn. Code Ann. § 40-35-303(b); Ashby, 823 S.W.2d at 169. The presumption in favor of alternative sentencing may be overcome by facts contained in the presentence report, evidence presented by the State, the testimony of the accused or a defense witness, or any other source, provided it is made part of the record. State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996). Sentences involving confinement should be based upon the following considerations:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103 (2003).

In the case under submission, the record evinces that the trial court considered these factors when it sentenced the Defendant. In denying alternative sentencing, the trial court explained:

> I find in this case that confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct, furthermore, measures less restrictive than confinement have frequently or recently been applied, and I'm not sure how recent that it was that [the Defendant] violated [his] probation, but [the Defendant has] violated probation in the past, but the main reason that [the Defendant] should serve [his] sentence in this case is because [he has] been given opportunity after opportunity. [He] continues to commit crimes, [his] smoking marijuana yesterday and driving was a crime, in and of itself . . . .
>
> I just have no assurance, based upon the evidence that is before me, that [the Defendant] will be successful on probation of any type. So therefore, all of that overcomes your presumption of favorableness for alternative sentencing, and it's just time that [the Defendant] serve the sentence that's been imposed.

The evidence does not preponderate against the trial court's finding. The record reflects that the Defendant has a long history of criminal activity including almost a dozen prior misdemeanor convictions. The record also shows that the Defendant has violated his probation on at least one occasion. The trial court concluded that, therefore, there was no evidence that the Defendant would

be successful at a form of alternative sentencing. Further, the trial court determined that the Defendant continued to participate in criminal conduct, and the Defendant admitted at the sentencing hearing that he had smoked marijuana the day prior to the sentencing hearing. Therefore, we conclude that the evidence does not preponderate against the trial court's determination as to the manner of service of the Defendant's sentence. This issue is without merit.

### III. Conclusion

In accordance with the foregoing reasoning and authorities, we affirm the Defendant's sentence.

_____
ROBERT W. WEDEMEYER, JUDGE